Thank you. I get briefed. My name is Christopher Stewick. I'm an appointed counsel on this appeal to, in this, representing Mr. Andre Dewberry. A brief history of the appellate procedure in this. There was an Andrews brief filed, and I believe that the court kicked it back. And then government counsel in the U.S. Public Defender's Office filed the brief. And then the government, I'm sorry, this panel wanted supplemental briefing. They appointed me in November to brief this case on the two issues of the merits of a guilty plea waiver issue and whether appellant's conduct warrants the district court's denial of self-representation. The government has somewhat waived or conceded the second one. They stated in their reply brief that his conduct did not warrant his denial of self-representation. The government then went on to a little bit of a sidebar saying, well, he didn't unequivocally stated that he wanted to be self-represented. I find that argument somewhat dubious. Mr. Dewberry filed a motion to represent himself. He did in front of the magistrate. The magistrate heard it. The magistrate gave the proper warnings about the dangers of going pro se, and the magistrate judge granted that ruling. So I don't know how much more clear it can be that he wanted to represent himself. Now, during his conversations with the district court, it became apparent with all due respect that the district court wanted Mr. Dewberry to be represented by counsel. And you can almost go so far by looking at the record that the district court was hoping that matter could be plead out. And it went so far where the district court kept on asking him, and Mr. Dewberry finally said on the record at one point, why do you keep asking me about self-representation? I filed a motion. Now, Mr. Dewberry didn't say this, but in essence, I filed a motion. It was granted. I'm representing myself. So he couldn't say this to a judge, nor could I. But move on. That issue's been resolved. So I don't think there's any doubt that this record supports the fact that Mr. Dewberry exercised his right to self-representation. So then I think that's going to take us pretty far into the second issue. The fact that he was denied his right to represent himself, because as the record knows, this court is well aware, that the court went ahead and reappointed the public defender to Mr. Dewberry. Wasn't that, though, after asking Mr. Dewberry whether he still wanted to represent himself, and then he said something about, well, you can't force the other lawyer to do it. And the lawyer, whose name escapes me, said, I'm happy to, I'm ready to do it if you want me to do it, Judge. Yes, she did say that. And the judge also told Mr. Dewberry, I can appoint her to do it. But the problem with that, Your Honor, is that... To be unequivocal, didn't he need to say, I don't really care whether she wants to do it. I want to represent myself. Well, that's why he filed the motion. It was granted, right? I mean, my perspective on that is, as I say, it's a done deal. It doesn't matter. It's a right to self-represent yourself. I don't need to give a reason, because I fired her, because we didn't get along, whatever. I think that's a red herring, Your Honor. I exercised my right. And I think that the public defender somewhat inserted herself by saying, well, I'll represent him, and maybe he would like representation if it wasn't me. Again, all that was not needed. He exercised his right. It was granted. With all due respect, the district court should have moved on from that fact. The district court did not. They reappointed the public defender, and a plea was worked out. And something else about this plea I want to point out. It appears from the record, not crystal clear, but somewhat clear, is that she was working on a potential plea agreement for Mr. Dewberry during the time that she was no longer representing Mr. Dewberry because of magistrate's order. And I think that's important, because in some of these cases we're going to talk about, because it appears the issue we're going to talk about today is an issue of first impression in this court, is does the guilty plea waive any claims he has against self-representation? Because he went to a hearing, right, and went through the plea colloquy, which many can recite by heart, and there are a number of questions asked of him. Any time he could have said, no, I do not want to proceed with this lawyer. I need to represent myself. How do we get out from under the plea hearing? Well, that's a good point. Well, because for one thing, we could look at the Hernandez case in the Ninth Circuit, what his options were. And secondly, he said he wanted to represent himself. He never took that back. So what's he supposed to do? I mean, we have to put some type of realistic expectations on these defendants. I made a statement I want to represent myself. You put this attorney on there who I didn't want on there. So do you want him to hold up the plea and say, you know what, look, I said, I'm just going to stand my ground. I do not think that she did everything she was supposed to do, or she did some things I didn't want her to, because apparently she entered into a plea agreement. I didn't want her to negotiate for me. I don't want her representing me now. So is your argument that it's not a voluntary plea? Is that how the court can then look at this? I would think so. The problem with saying it that way, I think that some of the cases, look, if it's not voluntary, you need to explain why it's not voluntary. But what was his options at that point? Either to go at trial, which would have been unconstitutional, right? That's what the Hernandez says, the Ninth Circuit. The one circuit that says that you do not waive your right to self-representation. And they said, what's his options? To go to a trial that's completely unconstitutional, because I think at least we could all agree on that. If that was the only issue, I exercised my right to self-representation. It was denied. I went to trial. That would be reversed, right? But I don't think he needs to go through that. Under the Hernandez approach, isn't it just considered involuntary as a matter of law? I think it is. I think that's a great way of saying it, Your Honor. Thank you. And that's what it is. And we don't even need to do that other aspects of the law. We don't need, I'm more of a commercial lawyer than a corporate lawyer. I can settle a case and still sue somebody for malpractice. I don't need to go all the way through that. Especially, why do we want to go through these judicial resources knowing that there's a trial that's unconstitutional in itself? The only hope is that, yeah, maybe he wins it and then it's moot, but other than that, we just start all over. It really just doesn't, it's not a practical answer. So as far as, with the government conceding that his conduct did not warrant self-representation, and I think it's clear that he asserted it. As I stated, there's split panels on whether a guilty plea fabricates somebody's decision to be self-representative. I think it's the fourth, seventh, and tenth have stated that a guilty plea, then they can no longer, if they enter into a voluntary guilty plea, Your Honor, they can't go back and say, you violated my rights to self-representation. The Hernandez case is the only circuit that I have found so far that allows a person to maintain his forerunner rights by pleading guilty and going back and saying, you violated my rights to self-representation. I assume you want us to adopt Hernandez, right? That's correct, Your Honor. Why? Why is that the better approach? Because I think it's what we just talked about. Because to make somebody go through an unconstitutional process, because we all agree, it would, in fact, Hernandez used that term. I don't know if it's unconstitutional. That's probably not the right way. But let's just call it, it would almost be void on its face. Because it's clear, the U.S. Supreme Court said, I have a right to represent myself. You're denying it. So why are you making me go through a trial? You're making me do, you're making me, the law doesn't make us do, I'm sorry, I can't think of the terms. It doesn't make us do frivolous things, right? In all areas, just not criminal or civil. So that's why I think it's the best way. And I think it's even easier for the trial courts. Somebody asserts their right to self-representation. If you deny that at all, and even if you make them do a guilty plea, they're still going to get to their self-representation. And I think that would even be more important in this case, because with all due respect to the district court judge, he used a hammer to get this public defender back on this case. Badgered Mr. Dewberry about why. It's a right. If something's a constitutional right, I don't need to tell you the why. Are you arguing at all that this is somehow structural? I mean, there's plenty of constitutional rights, right? That a valid and voluntary guilty plea, you just can't raise them right after that. Why is this one different? Why is the self-representation different? I believe on that one, Your Honor. And I'm not fully briefed on this, but there's one concept called the structural error. And I think it was the U.S. Supreme Court that said the right to self-representation was a structural error, and a structural error cannot be harmless. I cannot give you a quote on that, but I know that's out there somewhere. I'd be happy to self-representation. I mean, because it's not the right of the attorney, I have the right to manage my affairs, and you're taking away, you know, because what we have at risk here is liberty, right? If I don't want the public defender to do it, and I want to take a chance, yeah, we know the chances of him winning as opposed to being represented by counsel is pretty well zero, but that's his right to do that. And that's... Counsel, what about the concept that the guilty plea breaks the chain of events such that you no longer look back to constitutional violations prior to that? What's wrong with that theory? That's the Tula case, and I think that goes to Judge Kelly's remark. Why do we do that? If it breaks the chain, why, of all the things that it breaks, why wouldn't it break the chain in this one? And I think it's the fact that it's a fundamental right to self-represent yourself, and the fact that you're denying me that right and making me plead guilty, you're denying that right, and I believe that should be an exception to the break of chain. I'll save the rest for rebuttal. Thank you, Mr. Sawicki. May it please the Court, Kurt Boling for the United States. I'd like to discuss the first waiver of the right to being represented by an attorney, his Sixth Amendment right, which is obviously a co-equal and somewhat yin and yang right with the Feretta right, and one that is also equally important. I read the record a little bit differently than counsel, but obviously I'm reading the record differently than everybody in this case because I did, as noted, after my review of the record decided not to forward the issue about the behavior issue. But I do read the record differently. I do not recall that Mr. Dewberry made a motion to represent himself. I believe the way that this happened is that Mr. Dewberry made a motion to disqualify Ms. Allen, his counsel. So it was a fairly typical situation one would see where a defendant who was represented by an appointed counsel was unhappy with that counsel, and we'll discuss in a minute, I think, some reasons why that unhappiness was present. That then resulted in a hearing before the magistrate judge, and the hearing, I think, the ostensible reason for the hearing initially was the motion. And what happens in this case, and I think in many cases, is that Mr. Dewberry was given some choices. He was given the choice to hire his own attorney, which he did not have the financial resource to do, I assume. He was given the choice to keep Ms. Allen because the magistrate judge concluded explicitly that Ms. Allen had not provided any subpar service or was ineffective, and therefore Ms. Allen was to stay on the case, or he could represent himself. And so out of that process, and I will note that this occurred, there was a hearing that I think is not transcribed, or it was a closed hearing, obviously, the government was not present, where this event actually happened. But I think at the next hearing before the magistrate judge, it becomes clear what kind of the chain of events was. Throughout this case, if you actually look at the record, and I think I've cited that extensively, Mr. Dewberry indicates that he understands that he is not someone who should represent himself, that he wants a lawyer, he just doesn't want Ms. Allen. In order for the magistrate, though, to make the ultimate conclusion that Mr. Dewberry could represent himself going through the hearing, wouldn't that be an affirmative assertion of a right to represent oneself? I mean, I don't know how you can say that that was, even I understand what you're saying, that sort of it came around sort of through the back door. Right. But once you get to that point, it seems that he has to affirmatively request or choose one of the options, and that seems like an affirmative. Interesting, Your Honor, that is not the case law. There's a case I just looked at this morning, Sanchez-Garcia, out of the circuit, where this is exactly what happened. It was actually a trial. I believe the defendant had a retained counsel. The retained counsel was disqualified. The defendant, representing, no longer had funds to hire a retained counsel. The trial court gave him the option of having an appointed lawyer or being pro se. In that case, Ms. Sanchez-Garcia said nothing. It was deemed by this court that that was sufficient to indicate that he would represent himself. That's an interesting case. I think if you look at a lot of these cases, you will find that that's the factual pattern. I'm sorry. So you're saying that that was an affirmative request? I'm saying that it was not, but that's very common in these cases. And you'll see this in this case, too. Mr. Dewberry is constantly saying on the record, especially to the magistrate judge, Judge Larson, I am going with the choice that you gave me. He says that repeatedly. He says, this is all I can do. This is the choice you've given me. I would note, as I noted in my brief, that he actually filed a motion, or at least a letter, to the court asking for appointment of counsel while all this was going on. So everything that he's saying is he wants to have a lawyer. He just doesn't want to have Ms. Allen. And this court of other courts have said that if you're in this box, if your only choices are take the lawyer you don't like, represent yourself, or hire one, but in a situation where that's really not possible, the person does not have the financial resource to do that, just as the on to represent himself, even though Mr. Dewberry never asked for that. But this court and other courts have said that is a way that you get to represent yourself. It's recognized. And it's common. It's a common fact pattern. But that is what happened here. And I think that's really important when we get to hearing before Judge Whipple. So just to sort of understand your argument, then you're saying that because of that backdrop of the way it happened, that it's not an unequivocal request? I mean, at that point, let's say stop right there. Magistrate said, all right, you've chosen option three. Are you saying that that's not unequivocal? No. I am not saying it's not unequivocal. I'm saying that it should be recognized as being a different situation than a defendant who comes in the front door and says, I absolutely want to represent myself. I think those two situations, they both get to the same place. They both, I think, are the same for Ferretta analysis. But they are not the same in this case, because I think it informs what happens at the backdrop for what happens with Judge Whipple. So then we get to Judge Whipple. And essentially, what's going on there is I think it's clear from the record, and it goes on for many, many pages, that Mr. Dewberry's main concern about this whole case is his ability to assert this justification defense to his possession of a firearm charge. And I believe, inferentially, and I think this is a fair inference, but the court can obviously read the record, that his issue with Ms. Allen, his attorney, is that she's telling him that's not a legal defense on the facts of your case. And the magistrate tells him that. And then finally, we get to the pretrial hearing. Judge Whipple grants the government's motion in limine eliminating that defense from the trial that's about to happen. So I think given the backdrop of this defendant consistently not saying, I want to represent myself, but saying, I want to be represented, I think it was totally reasonable for Judge Whipple to bring the conversation back around to this representation issue, which is what he did. And then at that point, what Mr. Dewberry says is, and he does say, I want to represent myself. He says those words. But he says, because she quit, meaning Ms. Allen, his attorney, quit. Judge Whipple comes back and says, I thought you fired her. And then we get into the conversation with Ms. Allen, where you ask her if she'll represent him at trial. And she says, yes, she's perfectly willing to do that. And so our contention basically is, it's not clear and unequivocal because Mr. Dewberry's statement, his key statement here, is conditional. It's conditioned on the fact that his attorney quit. Judge Whipple, I think, not unreasonably says, no, I can reappoint her. She wants to do it. He does reappoint her, thereby taking care of Mr. Dewberry's state of condition. Is it a perfect record or the clearest record in the world? It sure isn't. And I think we all wish it was better. But that's what we're stuck with. And so I think on that record, you can find that it was not a clear and unequivocal request for a lawyer, particularly given the backdrop of he always wanted to be represented, and he actually moved for that relief earlier in the case. Moving on to the second issue, which I think is a very interesting one. It is the government's Henderson Supreme Court case is the proper precedent in this case. I think the case that has the most complete discussion of that issue is the Musawi case out of the First Fourth Circuit. Musawi being, of course, one of the 9-11 conspirators. The facts of that case are very close to the facts of this one. Musawi was allowed to represent himself. At some point, that was changed to him being represented by counsel. He entered a guilty plea, and the Fourth Circuit found that Tollett applied, that any constitutional errors that occurred, alleged constitutional errors that occurred before the guilty plea were no longer operative on appeal. And it's not a waiver issue. I think it's, I call it extinguishment. I think that's more the idea. As the Tollett court said, it's a break in the chain of events. And as noted, I think by my counsel quite correctly, every circuit who has faced this issue but the Ninth has held in that way, that Tollett is the correct case to apply here. If you look at the case, the Nicer case, Hernandez, I mean, the government, of course, disagrees with the notion that his guilty plea was involuntary because of the alleged Ferretta violation. I don't think the voluntariness issue is any different in this case than it is in any other case. We certainly don't say in any other cases, because someone was represented by counsel, that somehow it's involuntary. I think that would be a fiction, frankly. In this case, there's a clear record before Judge Whipple that Mr. Dewberry was asked many times, I think, especially in this case, many times, whether he was entering to this plea voluntarily, whether he was happy with his attorney, all the questions, as you noted, Judge Kelly, they're quite standard and well known to us. And he answered all those questions affirmatively. So there's nothing on this record to suggest that his guilty plea was anything other than voluntary. Well, let's assume that, for purposes of this question, that he did unequivocally request to represent himself. And we get to the guilty plea hearing. What procedure would someone in his situation have to abide by to preserve this? Go to trial? Yes. And that's what Mosawi says. I've also cited to you the line of cases of the Supreme Court in Luce, and then there are Eighth Circuit cases that follow this, that I think are comparable, in which it's held that a defendant has to testify in order to preserve an objection to a motion in limine, allowing things like, let's say, impeachment on certain types of prior offenses. Why isn't the right to represent oneself different? Why isn't that different than so many of the other rights that you can legitimately... Why is it not different? Why is it... No, yeah, why isn't it different? Why isn't that... It's the right to represent oneself throughout the course of the case. Why isn't it... I think, from my perspective, I don't think it's different. It's not different, I think, in constitutional dimension than the right in Tullett, which had to do with the way in which juries were selected and whether there was racial discrimination, which is a very important fundamental right. But the Supreme Court, nonetheless, said it was waived. But I think the real answer to that question, it goes to the kind of procedure... It goes to a procedural issue, I think, more than what you're getting at in terms of, is it a kind of a special right? I think the question is, what... I think a different rule is problematic. If you were to say that the... I think it's premature, in a sense. I think this case illustrates that. And that's why I decided to lose for you. If we'd gone to the next Monday and Mr. Dewberry had wanted to go to trial, I think it's only speculative to say that he couldn't have renewed his request for self-representation at that point and gotten it. So that's part of the problem, is that I think it's... If you don't make people go through the whole process, then you're going to have cases that come up here where, in fact, the result might have been different if you had made them go through the whole process. But I think, structurally, that's problematic for the appeals court. The second issue I think it introduces is... I think it introduces a level of game playing that you simply don't want to introduce into these proceedings. And I'm not saying that's true for Mr. Dewberry. I think that might be true at sentencing, but I don't think it was true before that. I think Mr. Dewberry has other things going on. But I do think that with this issue of... And I think that one of the cases that I cite here from the circuit, and that is... One I can't find, just a moment. Hamilton versus Gruss, I think, is an excellent discussion of this issue, which is that because you're talking about two co-equal rights, the granting of one, which is necessarily the denial of the other, either you're granting self-representation, you're granting the right, Sixth Amendment right to counsel, you're always going to be in a bit of a box. Because... And I'll tell you truthfully that on this record, I'm not sure this isn't the better record for the government than if he'd let the guy go to Foreta, for all the reasons I mentioned, represent himself. We're in a box either way. This is not a great record for either side of that. And so I think a lot of defendants are fairly sophisticated about this. And so if you have a rule that doesn't require them to go to trial, then they are incentivized to make, frankly, less than clear records. And a lot of these records are less than clear, if you look at the case law, by definition. They're incentivized to make less than clear records. And I think making them go to trial to preserve this right is the right thing to do. The last point is they can go to trial and be acquitted. It may not happen very often, honestly. I'm not going to tell you that's going to happen every day, but it can happen. If they go to trial with a lawyer and are acquitted, then you never have to see these cases. What about the part of the transcript where it seems that the district court says, well, the reason I appointed you counsel was so we could get through this plea. Does that affect the voluntariness of the plea? Does that affect our assessment of this? No. And the reason is because it was made later in the proceeding. That was at the sentencing hearing. And so I think for the purpose of determining whether there was a clear and unequivocal waiver, you have to look at what happened in the pretrial conference. That's the key. No, not the equivocal. I'm sorry. I didn't make my question clear. Does it affect whether or not the plea itself is a voluntary plea if, in fact, the district court has expressed the view that I appointed you a lawyer so that I could get this plea? Well, so two answers to that. First, on the facts, I'm not clear that that was in Judge Whipple's head at the time that he actually did the reappointment. So remember, there's months between the time that the pretrial hearing takes place and the time the sentencing takes place. And I've tried cases in front of Judge Whipple for 20 years. So he says things sometimes that are a little out of school. We know that. But it's not actually clear to me that that wasn't something he thought of after the fact. But more to the point, I think the answer is no, because this court, no court has ever said that someone who enters a guilty plea with competent counsel is doing and does and indicates on the record that they're doing so voluntarily that that's involuntary plea. There's nothing different about this case than in any other case that you look at. So that's my, what I would say to the court is that that is, in fact, what you should follow, that you should reject Henderson and follow the vast majority of circuits who have said that all that applies here. Thank you. Your Honor, I think I have your answer to the reason why. As you stated earlier, we can all, anybody who's practiced criminal law, we can almost in our sleep go through the plea. You're waiving your right to compulsory witnesses, the right to appeal, whatever, go through the long list. So why, the reason why it's different here for Dewberry and people situated like him, I think it would be more fair, instead of trying to hide the egg, to say, Mr. Dewberry, if you do plead guilty, I want to remind you that you've asked to self-represent, to be self, to represent yourself. If you plead guilty, you are waiving your right to argue that going forward. But we don't do that in our guilty pleas. So maybe if you don't want to go along with Hernandez, at a bare minimum, if there is a case before a trial court, and there is an issue whether the defendant asserted his right to self-representation, and perhaps that was being taken away or whatever, I think at a bare minimum, for just fairness, to let him know during a plea agreement, that if you plea, you're not going to be able to come back and say, you had a, you can argue that your right to self-representation was violated. That's what I think we should do. If that's the case, I get it, you know, having one panel out of four, I think that would be one of the answers. I think the answer is follow Hernandez, especially in this case. But if not going forward, I think at least this court should send down, I'll use the term of warning, to the trial court judges that, of this issue. So let them know that they're waiving that. And lastly, the counsel indicated he didn't think there was a record for the, or a motion to represent himself. I would direct the court to document 145 at the trial court below. I believe it was filed on 229 of 2016. I have no further.